## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

TALA JOSEPHANO,                )
Plaintiff–Appellant,          )       No. 25-7148
                              )
V.                            )
                              )
AMERICAN AIRLINES INC., and   )
                              )
MICAH E. TICATCH,             )
Defendants–Appellees.         )
                              )
_____     )

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
DEC 0 1 2025
RECEIVED

**APPELLANT'S TALA JOSEPHANO RESPONSE IN OPPOSITION TO APPELLES' MOTION FOR SUMMARY AFFIRMANCE**

## <u>INTRODUCTION</u>

Appellant Tala Josephano respectfully submits this Response in Opposition to the

Motion for Summary Affirmance because this appeal presents numerous

substantial questions of law, multiple structural due-process violations, and

contested factual issues that cannot be resolved through the extraordinary and

disfavored mechanism of summary affirmance. The appeal challenges the District

Judge's failure to recuse or decline reassignment despite prior affiliations and

circumstances that created a reasonable question about her impartiality; her ex

parte and premature engagement with defense counsel on service and merits issues

before personal jurisdiction and mandatory joinder attached; the manipulation and

misapplication of related-case and reassignment rules that deprived Appellant of a neutral, randomly assigned tribunal; and a pattern of hostility, intimidation, and delay toward a pro se litigant that cumulatively undermined the fairness and integrity of the proceedings and led to dismissal.

Summary affirmance is permissible only where "the merits of the appeal are so clear as to make further briefing unnecessary." This appeal is the opposite: it requires full briefing because the underlying proceedings were infected by judicial irregularities, error of the law, appearance-of-bias violations, jurisdictional defects, and procedural errors that go to the very integrity of the judicial process.

Appellees devote substantial portions of their motion to arguing the merits of the underlying dismissal—including judicial-proceedings privilege, claim-splitting, and Rule 12(b)(6) elements. Those issues are beside the point because this appeal does not challenge the substantive merits of dismissal; it challenges the process by which the case was handled, including the improper related-case reassignment initiated by a case manager, the judge's personal involvement in a litigant dispute in a separate case, the resulting appearance-of-impartiality problems, and the denial of reassignment and recusal. Under Liljeberg, In re Murchison, and 28 U.S.C. § 455(a), if recusal or reassignment was required—as this appeal squarely contends—then all subsequent orders, including the dismissal, must be vacated

regardless of their merits. Appellees' attempt to reframe this appeal as a challenge

to the substance of dismissal is therefore misplaced and cannot support summary

affirmance. Because the appeal presents substantial constitutional and procedural

questions, requires de novo review on key legal issues, and concerns structural

errors that cannot be brushed aside summarily, Appellees cannot meet the stringent

standard for summary affirmance, and their motion should be denied so that full

briefing may proceed

## FACTS & BACKGROUND

**A. Unrelated Cases:** *Ayyash v. American Airlines, Inc., et al.*, **No.**
**1:24-cv-03434, and** *Josephano v. American Airlines, Inc., et al.*, **No.**
**1:25-cv-0753**

Despite the desperate attempt by Appellees to connect the " Ayyash case" to this

one , this appeal arises from a separate action brought by Appellant Tala

Josephano, pro se, against American Airlines, Inc. and its counsel, Micah E.

Ticatch, alleging multiple counts of fraud, intentional misrepresentation,

omissions, and abuse of process arising from Defendants' conduct during prior

litigation. The district court dismissed this later-filed action, and Appellant now

challenges only the structural and procedural defects in how the case was assigned

and adjudicated—including the improper related-case designation under Local

Civil Rule 40.5, the reassignment that bypassed random judicial selection, and the

presiding judge's refusal to recuse sua ponte or upon request under 28 U.S.C. §

455, despite conflict-of-interest concerns from her former firm's representation of

American Airlines, appearance-of-bias issues, and violations of the ethical

obligations embodied in Canons 2 and 3 of the Code of Conduct for United States

Judges.

This case is distinct from Ayyash v. American Airlines Inc., et al., No.

1:24-cv-03434, which was filed on December 31, 2024, by three

plaintiffs—including Appellant—against American Airlines and Gulf Air B.S.C.

That action is an aviation-related suit involving allegations of wrongful death,

aviation-safety violations, and fraud against the government affecting multiple

plaintiffs. By contrast, the present case—Josephano v. American Airlines Inc. &

Micah E. Ticatch, No. 1:25-cv-0753, filed in March 2025—asserts claims by

Appellant alone against Appellees based solely on their conduct toward her

personally in the prior litigation, including false service certifications to her

personally, misleading fraudlant statements by Appellee that is not covered by

privileges, and misuse of judicial process directed specifically at Appellant.

Appellant Tala did not file any motions to address fraud against Appellees in the

prior case (No. 1:24-cv-03434), other plaintiffs who filed motions to strike the

Certificates of Service after filing initial claim.

Appellant asserts that the case manager Mr. Paterson—whose removal had been requested multiple times by the plaintiffs in the 2024 aviation case (No. 1:24-cv-03434) due to alleged misconduct, negligence, and favoritism toward defendants—improperly designated the 2025 action as "related" and requested it personally to be reassigned to the same District Judge " Judge Ana Reyes". This reassignment occurred even though the new case had already been randomly assigned to Judge Walton, and only after intake delayed docketing the complaint for six days despite Appellant's in-person filing and repeated follow-up calls. It's almost a ring inside the court helping Appellees and Co Defendant in that Case Gulf Air B.S.C. When Appellant contacted the Clerk's Office to inquire about the removal from Judge Walton, she was informed that the reassignment was initiated not by the automated related-case procedures under Local Civil Rule 40.5, but by a direct request from the case manager, Mr. Peterson. Because a true "related case" under LCvR 40.5 would have been automatically routed to Judge Reyes at filing, the manual intervention by the case manager further confirms that the reassignment was improper and contrary to standard procedure. In Appellant's view, this misapplication of Local Civil Rule 40.5 bypassed the required random assignment process and placed a new, distinct fraud-and-abuse-of-process case before a judge who had previously been involved in the Ayyash aviation matter involving American Airlines and Gulf Air. This improper linkage of two unrelated actions

forms a central basis for Appellant's argument that the assignment process created an appearance of bias and contributed to the structural due-process violations at issue in this appeal if not Fraud upon court by Appellees, court staff and potentially the judge. Judge Ana Reyes attempted, in the March 28, 2025 pre-conference hearing, to clear the path to dismiss both actions through clear legal error, misapplication of governing law, and overreach of her judicial authority. As the transcript (Exhibit 1) reflects, she did so by overriding the constraints of the Federal Rules of Civil Procedure , intimidating a Pro Se and abandoning the neutrality and impartiality required of a federal judge.

The concerns about neutrality were further heightened by the fact that District Judge Ana C. Reyes spent more than twenty-five years at Williams & Connolly LLP, where she served as a partner before joining the bench. Williams & Connolly continues to represent American Airlines through Airlines of America, as reflected on the firm's publicly available website, moreover, Airlines of America and Appellee American Airlines Inc are the main player in lobbying for the FAA for the Codeshare program, creating a residual appearance of alignment between the firm and the Appellees. Appellant & transcript of the March hearing ( exhibit 1) further asserts that the interactions observed between Judge Reyes and attorney Micah Ticatch appeared unusually familiar, which—when combined with her long-term affiliation with a firm that maintains an ongoing attorney-client

relationship with American Airlines—raised additional concerns about impartiality. Appellant argues that these circumstances created a reasonable question about Judge Reyes's neutrality under 28 U.S.C. § 455(a) and Canons 2 and 3 of the Code of Conduct for United States Judges, requiring sua sponte recusal or reassignment in this case—neither of which occurred.

### B. March 28, 2025 Pre-Conference Hearing — *Ayyash v. American Airlines, Inc. & Gulf Air B.S.C.*, No. 1:24-cv-03434

During a pre-conference hearing on March 28, 2025, in the unrelated 2024 aviation case (Ayyash v. American Airlines, No. 1:24-cv-03434), Appellant alleges that the District Judge engaged substantively with Appellant's newly filed, **unserved** 2025 action (No. 1:25-cv-0753) and personally attempted to effect service on Appellee "defense counsel" Micah E. Ticatch during the hearing before American Airlines had submitted a notice of appearance in the new case and before that defendant had been served. According to the transcript of that hearing , attorney Ticatch informed the Court: "Your Honor, I have been **alerted** that one of the plaintiffs in this case has filed a lawsuit against me personally… I have not been served with it yet. I just found it on the docket." The Judge then questioned Appellant about the merits of the new complaint—despite admitting she had not read it—stating with hostility to Appellant Tala : "I'm telling you right now that this second complaint… has no basis in it whatsoever." She then declared, "***Mr. Ticatch, you've officially been***

*served. I just served you. Will you please file a motion?*," thereby initiating

service herself before jurisdiction attached, mandatory joinder was complete, and

before Appellant could amend or retain counsel acting as defense counsel rather

than a judge.

Appellant views this conduct as judicial overreach, improper ex parte-like

engagement with one side, bias, and an exercise of authority exceeding the limits

of FRCP 4(c)(1). These actions occurred before personal jurisdiction attached and

in violation of jurisdictional prerequisites recognized in *Steel Co. v. Citizens for a

Better Environment*, 523 U.S. 83 (1998). Taken together, they created ( at

minimum) an appearance of bias requiring recusal under 28 U.S.C. § 455 and the

applicable judicial Canons, or at minimum reassignment.

The District Judge also made statements threatening consequences against

Appellant while expressing protective concern for opposing counsel, telling

Appellant: "If I find that Mr. Ticatch is getting harassed by you, I have all the

power in the world to impose sanctions." These remarks—made while prematurely

discussing the merits of an unserved complaint and personally initiating

service—demonstrate judicial involvement in litigant functions, ex parte-like

engagement prompted by counsel, and an appearance of favoritism toward

Appellees. Such conduct violated the neutrality obligations embodied in Canons

2A and 3A(3) of the Code of Conduct for United States Judges, exceeded the limits of judicial authority under FRCP 4(c)(1), and created a clear appearance of bias requiring recusal or reassignment under 28 U.S.C. § 455(a) and due-process principles recognized in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) and clear abuse of discretion.

As part of her effort to understand the proceedings, Appellant recorded the March 28, 2025 hearing so she could later review the legal terminology and arguments presented, given her status as a *pro se* litigant. When comparing her recording to the official transcript, Appellant identified **material discrepancies**, including the transcript's notation that plaintiff *Samiha Ayyash* "appeared" at the hearing even though she was not present. Appellant's recording also reflects statements and exchanges—particularly concerning the Court's admonishments and threats of "consequences"—that differ in tone and content from those captured in the transcript. Appellant does not assert intentional alteration; however, the existence of these factual inconsistencies is relevant to the overall assessment of the proceeding's fairness and contributes to the reasonable appearance-of-impartiality concerns underlying this appeal. Appellant can provide the audio recording should the Court require comparison.

The circumstances here fall squarely within the category of cases where relief is required to protect the integrity of the courts. As recognized in cases like United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001), and authorities addressing improper influence, structural relief is appropriate where court processes or personnel actions directly impinge on judicial impartiality. The improper related-case transfer initiated by a case manager—after Appellant had filed complaints against that same staff member—combined with the judge's personal involvement in service disputes, ex parte communications, and premature merits engagement, constitutes the type of irregular influence that creates the exact appearance of compromised impartiality prohibited by 28 U.S.C. § 455 and mandates reversal under Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988). Summary affirmance is therefore impossible as a matter of law.

### C. Failure to Provide the Mandatory Rule 73(b)(1) Magistrate Consent Form

Additional procedural irregularities compounded the structural defects in this case. The Clerk's Office failed to provide the mandatory Rule 73(b)(1) magistrate consent-or-refusal form, depriving Appellant of her statutory right to choose or decline magistrate jurisdiction and raising further concerns about procedural fairness. The whole setup through hacking Appellant phone and network ( regardless or illegal surveillance on Appellant through someone in the government

in attempt to get these cases dismissed, allowed this case to go this specific judge and the second case as well, without any other judge involved in order to dismiss it, under the assumption a Pro Se who is under illegal government surveillance will fold quickly and abandon her rights. The amount of abuse and harassment that Appellant encountered since these cases have been filed, along with an attempt to poison Appellant which was reported to the Judge yet completely ignored requires investigation not dismissal of her cases.

Appellant moved for reassignment and later recusal based on the cumulative circumstances, but the judge accepted the reassignment despite the clear appearance of impropriety, misapplied Local Civil Rule 40 in denying reassignment, delayed ruling on recusal for two months—until after Appellees filed their dispositive motion—and denied recusal without applying the required objective § 455 standard of whether her "impartiality might reasonably be questioned."

### D. Cumulative Structural Defects Requiring Vacatur Under § 455(a)

The cumulative sequence of events in this case—improper related-case designation that bypassed random assignment (Issue 7); failure to recuse despite prior-firm representation (Issue 1); judicial intervention in service disputes, ex parte engagement, and premature merits discussion before jurisdiction attached (Issues

2–5); hostile and intimidating treatment of a pro se litigant (Issue 6); failure to provide the mandatory Rule 73(b)(1) magistrate-consent form (Issue 10); and the delayed and erroneous denial of reassignment and recusal (Issues 8, 9, 11–14)—collectively created a structural breakdown in the appearance of impartiality prohibited by 28 U.S.C. § 455(a). Under *Liljeberg v. Health Services Acquisition Corp.*, *In re Murchison*, and related precedents, when the judge's impartiality "might reasonably be questioned," all subsequent orders—including the dismissal—must be vacated, regardless of their substantive merits.

## PROCEDURAL HISTORY

Appellant filed this action on March 14, 2025, on March 20, 2025, the Clerk's Office—through case manager Mr. Patterson, who had previously been the subject of Appellant's complaints—reassigned the case to Judge Ana C. Reyes as a "related case" under Local Civil Rule 40.5. The reassignment did not include judicial findings or a Rule 40.5 analysis, despite the absence of overlapping claims or operative facts. No forms or notification was sent to the Appellant as well.

On June 10, 2025, Appellant filed a Motion to Reassign, explaining that the related-case designation was erroneous and created an appearance of impropriety in light of prior events in Case No. 1:24-cv-03434 . Additionally the Clerk's Office

again failed to issue the mandatory Rule 73(b)(1) magistrate consent-or-refusal form in this case, mirroring the same omission in the earlier action.

Appellees entered appearances on June 20, 2025, and filed a Motion to Dismiss that same day. The reassignment motion remained pending for **over two months,** despite the requirement that judges act promptly on requests involving their impartiality. During this period, the court took no action on reassignment but allowed Appellees' dispositive motion to proceed.

On August 5, 2025, the court issued a Fox/Neal Order directing Appellant to respond by August 20. Appellant then filed a Motion for Recusal on August 20, along with a sworn declaration. See Appellant Statement of Issues, Issue 13.

On August 21, 2025, the district court issued a minute order denying both the Motion to Reassign and the Motion for Recusal, relying on Local Civil Rule 40.5(a)–(c) and finding no basis for disqualification under 28 U.S.C. § 455. Appellant maintains that the court did not apply the objective "might reasonably be questioned" standard and did not address the cumulative circumstances or the judge's prior involvement in the related proceeding. After internet research, on August 29, 2025, Appellant filed a Notice of Election to Stand and preserve for appeal on the Complaint rather than respond to the Motion to Dismiss. On September 2, 2025, the district court entered a minute order granting dismissal,

deeming Appellant's arguments conceded under the Fox/Neal framework and dismissing the case without prejudice for failure to prosecute and failure to comply with the August 5 order and granting Appellees motion to dismiss **with Prejudice.** On October 2, 2025, Appellant filed a **Notice of Appeal**, and this appeal was docketed as No. 25-7148.

Appellees' suggestion that Appellant "chose not to oppose" dismissal mischaracterizes the record. Appellant filed a Notice of Election to Stand on the Complaint pursuant to Fox and Neal—standard judicially recognized procedures for preserving appellate review, not a concession of the merits. Appellant elected to stand on the complaint only after the judge had already, on the record in the related Ayyash hearing, expressed prejudgment of this action ("the second complaint has no basis") and engaged in conduct that reasonably called her impartiality into question. Under these circumstances, further briefing or amendment would have been futile, and Appellant followed established procedure to preserve her appellate rights. Appellees' attempt to convert this lawful preservation mechanism into a waiver argument is improper and cannot support summary affirmance.

## STANDARD FOR SUMMARY DISPOSITION

"A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). Before

summarily affirming a district court's ruling, "this court must conclude that no benefit will be gained from further briefing and argument of the issues presented." *Id.* at 297–98.

Because the appellant's right to proceed is "so clear," the merits of the case must be "given the fullest consideration necessary to a just determination." *Sills v. Bureau of Prisons*, 761 F.2d 792, 793–94 (D.C. Cir. 1985); *see also Cascade Broad. Group, Ltd. v. FCC*, 822 F.2d 1172, 1174 (D.C. Cir. 1987) (summary disposition is appropriate "only where the moving party has carried the heavy burden of demonstrating that the record and the motion papers comprise a basis adequate to allow the fullest consideration necessary to a just determination") (internal quotation marks omitted); D.C. CIR. HANDBOOK OF PRACTICE & INTERNAL PROCEDURES at 35–36 (Mar. 16, 2021). This appeal does not fall within those narrow confines.

## **ARGUMENT**

The merits of this case are not so clear that expedited action is justified. Appellant raises substantial questions of structural due process, judicial bias under 28 U.S.C. § 455, legal error, and tribunal neutrality that demand full briefing under *Taxpayers Watchdog*, 819 F.2d at 297.

A. The merits of this case are not so clear that expedited action is justified.

**First**, summary affirmance is improper because this appeal raises complex questions of legal error, issues of first impression, and structural constitutional violations. Appellant's Statement of Issues identifies sixteen independent bases for reversal, many of which involve misapplication of the Federal Rules and binding precedent and go to the neutrality of the tribunal itself. These issues require careful review under abuse-of-discretion and de novo standards, as well as analysis of due process, the judicial code of conduct, and cases such as Liljeberg, Murchison, and Microsoft—not summary disposition.

**Second**, structural constitutional violations cannot be resolved through summary affirmance. When an appeal concerns the appearance of judicial impropriety, due-process violations, or conflicts of interest, the governing authorities require evaluation on a full record because structural error "infects the entire proceeding." Appellees' request would ask this Court to summarily ratify rulings issued under circumstances that reasonably call the tribunal's impartiality into question.

**Third**, summary affirmance is inappropriate because the district court's orders themselves were the product of tainted proceedings. The dismissal, the denial of reassignment, and the denial of recusal all followed: (1) an improper related-case assignment under Local Rule 40.5; (2) judicial involvement in service of process;

(3) ex parte interaction before personal jurisdiction attached; (4) premature merits engagement during another case's hearing; (5) the judge's failure to recuse sua sponte under 28 U.S.C. § 455(a) despite conflict concerns from her former firm's representation of American Airlines, combined with untimely and partial rulings on Appellant's reassignment and recusal motions.. Orders entered under such conditions cannot provide a proper basis for summary affirmance.

**Fourth**, summary affirmance cannot substitute for the required de novo review. Issues such as misapplication of Local Rule 40.5, denial of reassignment, and legal error in denying recusal present pure questions of law reviewed de novo. Appellees' motion improperly treats these legal challenges as discretionary determinations already resolved below, but de novo review cannot be bypassed via a summary procedure.

**Finally**, summary affirmance is improper because numerous material factual disputes remain regarding application of the rules, the judge's conduct (including her attempt to personally serve defense counsel, her "all the power in the world" remark, actions taken before jurisdiction attached, the nature and extent of ex parte communications, and delays in deciding recusal). Summary affirmance is never appropriate where those underlying facts are both contested and central to the

issues on appeal. For all of these reasons, Appellees' motion should be denied and this appeal should proceed to full briefing.

### A. Summary affirmance is a disfavored remedy reserved for appeals where controlling precedent clearly dictates the outcome. *Taxpayers Watchdog*, 819 F.2d at 297

Appellees' reliance on *Walker v. Washington*, 627 F.2d 541 (D.C. Cir. 1980), is misplaced. Unlike the straightforward, record-based applications of settled law in *Walker* and *Taxpayers Watchdog*, this appeal presents novel questions of first impression under 28 U.S.C. § 455(a), including a judge's sua sponte recusal duty amid former-firm conflicts, judicial intervention in service of process, and cumulative structural due-process violations. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859–60 (1988), requires full appellate scrutiny of such appearance-of-bias claims, not summary disposition. Material factual disputes about the judge's conduct—central to the § 455(a) analysis—further preclude summary affirmance. These include the propriety of her personal service attempt on counsel, the context of her "all the power in the world" remark threatening sanctions, and the case manager's manual override of random assignment under Local Rule 40.5. *Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985) (fullest consideration required where facts contested).

Appellees thus fail their heavy burden: none of Appellant's 16 issues is "manifestly insubstantial," and further briefing is essential to resolve these unprecedented structural challenges to tribunal integrity.

### B. Appellees' "Background" section is not a neutral recitation of facts.

As a pro se litigant, Appellant has faced persistent procedural obstacles, including irregularities in court communications and docketing that impaired her full participation. Against this backdrop, Appellees' Background selectively links two distinct cases, obscures the procedural irregularities at issue, and injects substantive merits arguments outside the scope of this appeal. Appellant respectfully requests that the Court afford her filings the liberal construction due pro se litigants under *Haines v. Kerner*, 404 U.S. 519, 520 (1972), decline to rely on Appellees' misleading narrative, deny summary affirmance, permit full briefing, and grant leave to supplement this opposition if needed to ensure fairness.

Appellees improperly portray the Ayyash matter (No. 1:24-cv-03434) as routine and related. That case involves distinct claims (aviation safety, wrongful death), parties (three plaintiffs vs. American Airlines and Gulf Air), and facts from Appellant's later fraud-and-abuse-of-process action against counsel. Appellees' selective narrative mischaracterizes service objections in Ayyash—which other plaintiffs challenged via motions to strike certificates of service, while Appellant

did not—and injects merits arguments irrelevant to this structural-due-process appeal.

Appellees attempt to portray Appellant as a vexatious litigant to undermine her recusal and structural-due-process claims, but their focus on alleged "lack of prejudice" from the Ayyash service dispute is irrelevant. This appeal concerns only recusal under 28 U.S.C. § 455(a), improper related-case designation, and judicial conduct creating an appearance of bias—not Ayyash merits, service validity, or default. Appellees raise those extraneous issues solely to construct a narrative that Appellant's objections were baseless and judicial actions routine, which mischaracterizes the record and distracts from the tribunal-neutrality issues presented. Vexatious label requires formal findings; none exist here

The judicial irregularities in Ayyash—including the judge's involvement in service disputes, premature merits discussion, and hostile remarks—are relevant not because of any prejudice in Ayyash itself, but because they contributed to a reasonable appearance of partiality in this separate matter when the same judge was assigned. This includes concerns under 28 U.S.C. § 455(a) related not only to actual conflicts of interest but also to appearance of bias and judicial conduct. Whether the judge later adjusted deadlines in Ayyash does not erase the underlying misconduct that raises substantial questions about impartiality and due process in this case. Under § 455(a) and the Code of Conduct for United States Judges,

judicial impartiality must not only be actual but also appear to the reasonable observer, and here the cumulative conduct supports the need for recusal or reassignment to preserve confidence in the judiciary.

Appellees' "prejudice" argument seeks to re-litigate Ayyash merits to evade the issues properly before this Court: legal errors, recusal under 28 U.S.C. § 455(a), reassignment, abuse of discretion, and structural due-process violations arising from judicial conduct and improper related-case designation in this case.

Appellees' reliance on Local Civil Rule 40.5(a)(3) is misleading and contrary to the Rule's plain text, which deems cases "related" only when they "(i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction." LCvR 40.5(a)(3). The Rule does not automatically link every case by the same pro se litigant or defendant. Appellant's Statement of Issues demonstrates that none of these conditions exist between the aviation-safety/wrongful-death claims in Ayyash (No. 1:24-cv-03434) and Appellant's distinct fraud/abuse-of-process claims against counsel here.

Appellees emphasize Appellant's "numerous motions" in Ayyash to suggest she created procedural complications, when their counsel allegedly committed fraud upon the court—involving the case manager and fraudulent personal communications/misrepresentations against Appellant specifically, unprotected by

privilege due to their fraudulent nature. This framing justifies the improper

related-case designation, but this appeal concerns fraud, due-process violations,

and planned fraud-upon-the-court amendment—not Ayyash service certificates.

Appellees' "repeat filer" framing further serves to Undermine Appellant's recusal

motion by recasting it as retaliation for unfavorable rulings, rather than a legitimate

response to judicial conduct—including service intervention, premature merits

discussion, and hostile remarks—that created a reasonable appearance of partiality

under 28 U.S.C. § 455(a); and to Preempt Appellant's fraud and abuse-of-process

claims by dismissing her challenges to counsel's defective service certificate as

frivolous, despite record contradictions and counsel's later admissions confirming

irregularities. Appellees' selective narrative omits record contradictions confirming

counsel's service defects and judicial irregularities, reframing legitimate §455(a)

concerns as Appellant's fault."

Appellees' summary of Appellant's June 10, 2025 Motion to Reassign

mischaracterizes it by omitting Appellant's stated reason for not seeking recusal at

that stage: Judge Reyes's recent appointment warranted giving her an opportunity

to address the improper reassignment by case manager Mr. Peterson before risking

damage to her professional record. This restraint preserved judicial comity—not a

concession of no § 455(a) concerns, which arose independently from the judge's

prior Ayyash conduct (service intervention, premature merits discussion, hostile remarks). These events created a mandatory appearance-of-impropriety issue under § 455(a), raising substantial due-process questions that preclude summary affirmance.

Appellees' claim-splitting characterization of this district court action is meritless. Claim splitting requires the same parties (or privies) and the same "nucleus of operative facts" as the prior case. *See Al-Tayyar v. Earthlink, Inc.*, 993 F. Supp. 2d 104, 115 (D.D.C. 2014). Here, Appellant sued American Airlines and individual counsel Micah Ticatch for distinct post-Ayyash misconduct—fraudulent communications, abuse of process, and court manipulation—that arose after Ayyash commenced and could not have been litigated there. Courts reject claim-splitting where new parties or subsequent conduct is involved. Appellees' theory thus fails and cannot justify summary affirmance.

## CONCLUSION

Appellant respectfully requests that the Court deny Appellees' Motion for Summary Affirmance, assign this appeal to a merits panel, and permit "plenary briefing on the merits, oral argument, and the traditional collegiality of the decisional process." *Sills v. Bureau of Prisons*, 761 F.2d 792, 793–94 (D.C. Cir. 1985)

Dated: Dec 1, 2025

Respectfully submitted

Tala Josephano  Pro Se Appellant

Tala Josephano

1876 PCH

Lomita, CA 90717

(347)749-4980

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(a)(3)(B) and (d)(2)(a) and D.C. Circuit Rule 27(c) because it contains words 4640 (excluding excepted matter) according to the count of Microsoft Word and is printed in Times New Roman 14-point font.

**Dec 1, 2025**

**Tala Josephano** Pro Se Appellant

Tala Josephano

1876 PCH

Lomita, CA 90717

(347)749-4980

## CERTIFICATE OF SERVICE

I hereby certify that on Dec 1, 2025, I caused a true and correct copy of the foregoing Opposition Response to be served by First Class U.S. Mail, postage prepaid, addressed as follows:

1. Edward Lee Isler Counsel for *American Airlines Inc.* and *Micah E. Ticatch* Isler Dare, P.C. 1945 Old Gallows Road, Suite 650 Vienna, VA 22182

2. Micah Ephram Ticatch Counsel for *American Airlines Inc.* Isler Dare, P.C. 1945 Old Gallows Road, Suite 650 Vienna, VA 22182

Dated: Dec 1st, 2025

Respectfully submitted,

Tala Josephano  Pro Se Appellant

Tala Josephano

1876 PCH

Lomita, CA 90717

(347)749-4980

# EXHIBIT 1

1:24-cv-03434 March 28 2025 Hearing

```
 1                   IN THE UNITED STATES DISTRICT COURT
                            DISTRICT OF COLUMBIA
 2

 3      SAMIHA AYYASH, et al.,        ) CIVIL NO.:
                                      ) 24-3434-ACR
 4                  Plaintiff,        )
              vs.                     )
 5                                    )
        AMERICAN AIRLINES, INC.,      ) Via: Zoom
 6       et al.,                      ) March 28, 2025
                    Defendant.        ) Washington, D.C.
 7      _____) 2:00 p.m.

 8                      Transcript of Pre-motion Conference
                        Before the Honorable Ana C. Reyes
 9                          United States District Judge

10      APPEARANCES:

11      For the Plaintiff:

12           Samiha Ayyash, Pro se
             Feras Hindi, Pro se
13           Tala Josephano, Pro se

14      For the Defendant American Airlines:

15           Micah E. Ticatch, Esquire
             Isler Dare, P.C.
16           1945 Old Gallows Road
             Suite 650
17           Vienna, VA 22182

18      For the Defendant Gulf Air:

19           Mark A. Johnston, Esquire
             Darcy Osta, Esquire
20           Eckert Seamans Cherin & Mellott, LLC
             1717 Pennsylvania Avenue, NW
21           Suite 1200
             Washington, D.C. 20006
22
        Reported by:   Christine T. Asif, RPR, FCRR
23                      Federal Official Court Reporter
                        333 Constitution Avenue, NW
24                      Washington, D.C. 20001
                        (202) 354-3247
25
```

Proceedings recorded by machine shorthand;
transcript produced by computer-aided transcription

```
 1                     P R O C E E D I N G S
 2              THE CLERK:  We are on the record in civil action
 3       24-3434, Ayyash, et al., versus American Airlines Inc., et
 4       al.
 5              THE COURT:  All right.  Plaintiffs could you please
 6       state your names and defendant's counsel could you please
 7       state your appearances.
 8              MS. JOSEPHANO:  Tala Josephano.
 9              THE COURT:  All right.  Defense counsel.
10              MR. TICATCH:  Good afternoon, Micah Ticatch on
11       behalf of American Airlines.
12              MS. OSTA:  Good afternoon.  Darcy Osta and Mark
13       Johnston on behalf of defendant Gulf Air.
14              THE COURT:  All right.  And Ms. Josephano is Feras
15       Hindi on?
16              MR. HINDI:  Yes, I'm here.
17              THE COURT:  Okay.  So I looked over your various
18       motions.  I'm denying all the motions for default, because the
19       plaintiffs have -- defendants have appeared.  And they've
20       appeared appropriately under my local rules.  So those are
21       getting denied today.
22              Secondly, I think there's an issue with the case for
23       the plaintiffs that I just want to explain to you all, which
24       is it is not possible for individuals to file lawsuits in any
25       state that they want to.  They are required, under American
```

1    law to file a state -- an action either where the events

2    occurred or where the defendants are incorporated, that's the

3    broad swath.  And if those things don't -- if either of those

4    aren't present then the Court cannot hear the case.  And so

5    American Airlines has not yet filed a motion to dismiss for

6    lack of personal jurisdiction, that's what it's called because

7    of my unique rules.  But what they've told me is they plan to

8    file a motion to dismiss the case because the actions did not

9    happen in the District and because neither or none of the

10   defendants are incorporated in D.C.

11              And that's correct; right, defense counsel?

12              MS. OSTA:  Yes, Your Honor.

13              MR. TICATCH:  That's correct.

14              THE COURT:  So there's really very little that I can

15   do.  And I just wanted to explain that to you because I'm

16   going to give the plaintiff -- the defense an opportunity to

17   file their motion.  And if you want a lawyer, you know, I'm

18   happy to let you find one.  But this isn't a close call.  This

19   obviously does not belong in this courtroom.  So I don't want

20   you wasting money on this case.  Where are you all

21   headquartered or incorporated?

22              MR. TICATCH:  American Airlines is incorporated in

23   Delaware and its headquarters are in Texas.

24              MS. OSTA:  Gulf Air is a corporation under the

25   republic of -- or sorry, the Kingdom of Bahrain and that's

```
1    where its headquarters is located as well.  It's in Bahrain.
2              THE COURT:  Okay.  All right.  So you don't have a
3    U.S. presence?
4              MS. OSTA:  Currently that's correct, Your Honor.
5              THE COURT:  All right.  So the plaintiffs, Gulf Air
6    would be difficult to sue anywhere in the U.S., I think.
7    Although, I can't say that for sure.  American, you could sue
8    in Delaware or you could sue in Texas, but you cannot sue in
9    the District.
10             MS. JOSEPHANO:  May I speak when you're finished
11   with this, the personal --
12             THE COURT:  Yes.  Go ahead.
13             MS. JOSEPHANO:  I believe that after studying the
14   jurisdiction, I believe American Airlines fits under general
15   and personal.  And Gulf Air for sure they fit under personal.
16   The other thing is they've already participated in the case,
17   which means they filed oppositions, they filed quite a few
18   things.  And I don't know if that's a rule or not, but filing
19   I believe that would waive that.  But I am ready, we are ready
20   to present their jurisdiction proof that they both -- and Gulf
21   Air just stated that they have no presence in the U.S. which
22   is not accurate, which I can prove as well for both
23   jurisdiction.
24             And for D.C. the venue, I also can because the cause
25   of action, the fraud specifically and the negligence per se
```

```
 1    arise from D.C.  It's about the code share agreement and their
 2    misrepresentation to the Department of Transportation.  It's
 3    not about the death only.  There's two parts to the case.
 4    There is the personal injury with the death.  And there is the
 5    personal -- the claims as part of the public that actually
 6    were caused harm.  Can I be given a chance to prove the
 7    jurisdiction?
 8              THE COURT:  Yes, of course.  Yes.  All right.  Well,
 9    if you want to try to oppose, by all means.  They have not
10    waived personal jurisdiction.  They're permitted to raise the
11    issue in an initial -- they were allowed to file everything
12    they filed and they raised personal jurisdiction at the right
13    time.  So I'm not going to say they were late on that.  But if
14    you want to proceed, by all means.
15              So what we'll do is set a briefing schedule for
16    motions to dismiss.  So what happens, ma'am, is they will file
17    a motion, you will have an opportunity to respond.  They will
18    file a reply brief and then we will have a hearing.
19              I understand that for some reason you no longer are
20    receiving emails and that you would wish to be contacted by
21    mail.  That's really quite --
22              MS. JOSEPHANO:  I think the picture is not really
23    clear here where we have not discussed -- we're willing to
24    like pass over it, but we have not discussed the way that they
25    approached the service and the way they served or not served
```

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

| | |
|---|---|
| 1 | plaintiffs.  We have -- |
| 2 | THE COURT:  Well, they're not required to serve you, |
| 3 | ma'am.  You're required to serve them. |
| 4 | MS. JOSEPHANO:  I did serve them. |
| 5 | THE COURT:  Right.  But they're not required to |
| 6 | serve you. |
| 7 | MS. JOSEPHANO:  How are they not req- -- yes, go |
| 8 | ahead.  Sorry. |
| 9 | THE COURT:  So what they do is they file their |
| 10 | papers on the docket, on the electronic docket.  And then |
| 11 | usually what happens is that all of the lawyers and the |
| 12 | parties get emails from the docket automatically.  But for |
| 13 | some reason -- so they're not required to send you anything at |
| 14 | all.  All they're required to do is file their papers on the |
| 15 | public docket, which they have done. |
| 16 | MS. JOSEPHANO:  Aren't they supposed to serve us an |
| 17 | answer on the 21 days for our claims?  They're supposed to |
| 18 | serve us that. |
| 19 | THE COURT:  No.  No, they're not.  But, ma'am, |
| 20 | that's wrong.  They have 21 days to file an answer or a motion |
| 21 | to dismiss.  Each judge has different rules.  My particular |
| 22 | rules say that within the time line for service, they have to |
| 23 | file a pre-motion conference paper, which is what they did, |
| 24 | laying out what their motion will be.  And that was timely |
| 25 | filed and that is on the docket currently. |

```
 1           MS. JOSEPHANO:  So it was filed on the last day and
 2    if it's goes with the rules of your -- the outstanding orders
 3    it's -- they should have conferred with the plaintiffs, No. 1.
 4    And No. 2, she did have an expired attorney certificate on
 5    filing, which we were willing to confer the motion to dismiss
 6    before filing, but we were not approached for that.  So even
 7    though she did --
 8           THE COURT:  Ma'am -- ma'am.  They are not required
 9    to meet and confer for a dispositive motion.  A dispositive
10    motion is one that gets rid of the case, like a motion to
11    dismiss.  They are only required to meet and confer with
12    respect to a discovery motion.  So if the trial -- if the case
13    moves forward and you all have fights about documents, then
14    that they have to meet and confer about. Under the general
15    rules, there's no duty to meet and confer before you file a
16    motion to dismiss, which is what they plan to do.
17           The reason I have the pre-motion conference
18    requirement is because I think conferences are good before
19    motions.  But that's what they pursued and that's what we're
20    doing right now and that includes me as the judge.  So they've
21    done everything procedurally correctly.
22           MS. JOSEPHANO:  Okay.  May I ask here, American
23    Airline, they certified that they did serve the 21-day motion.
24    And they submitted their motion conference despite me pretty
25    much almost begging them to fix the certificate so we can
```

```
 1    submit in a position to his motion to dismiss.  He totally
 2    ignored it and filed the meet and confer eight days after the
 3    deadline.  Is that procedure --
 4              THE COURT:  Ma'am, I'm not quite sure what -- what
 5    is it that you want right now that you think you don't have?
 6              MS. JOSEPHANO:  I think we -- to be honest, I read
 7    his motion to dismiss.  And even the motion to dismiss and
 8    their meet to confer is about the merits, it's not even about
 9    their jurisdiction or any of this.  And even with that, they
10    both -- both defendants did not follow the procedure to serve
11    or serve on time.
12              THE COURT:  Ma'am --
13              MS. JOSEPHANO:  And she did file with an expired
14    attorney certificate.  And he did admit that he served on the
15    13th, which is day after the deadline he did admit to his --
16              THE COURT:  Ma'am -- ma'am, those deadlines are
17    rules that are a discretion of the judge.  If they did not
18    file on time, I don't really care, I'm giving them the extra
19    time.  So I'm denying the motion for default on timing.  So
20    that's gone.  Forget about the timing.  We are past the
21    timing.
22              MS. JOSEPHANO:  No, no, we're not worried about
23    that.
24              THE COURT:  Ma'am, we are because I said we are.
25    All right.  When I say we are past something, we are past it.
```

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

1    So we're fine, we're done, we're past the deadlines.

2              Now, they did file a motion to dismiss, but then

3    they realized that I have special rules, so then they withdrew

4    the motion to dismiss and they filed a pre-motion conference

5    document.  And then that's why we set this hearing, because

6    those are my rules.

7              Now, for some reason that I do not understand, you

8    all sent an email to my courtroom deputy saying that you no

9    longer wanted to receive emails and you took your emails off

10   of the automatic ECF filing, which is why we had to mail you

11   the information for this call.  Now, I want to understand

12   first, why you don't want to get emails.  And second, explain

13   to you that what I'm now going to allow is allow the

14   defendants to file motions to dismiss, I will let you have the

15   opportunity to oppose, they will get a reply and then we will

16   have a hearing.

17             MS. JOSEPHANO:  I'm good with that.  But I do not

18   wish to receive emails, because my phone gets either sometimes

19   does and sometimes doesn't, that's reason No. 1.  No. 2 is

20   they did not -- I don't want to say the word "respect," but

21   they didn't use it in the right way.  So I prefer to be mailed

22   like you mailed me a letter from the Court and here I am, I

23   appeared.  You mailed --

24             THE COURT:  All right.  That's -- ma'am, that's

25   totally fine.  If you want mail, that's totally fine.  That

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

```
 1    just means that you're going to get things three or four days

 2    after they've been put on the public docket.  If that's what

 3    you want, that's totally fine.  I don't care.

 4              Counsel, can you all add mail service to your

 5    pleadings, so that our courtroom deputy doesn't have to do

 6    this?

 7              MS. OSTA:  Yes, Your Honor.

 8              MR. TICATCH:  Yes.

 9              THE COURT:  Okay.  So after you docket it on the ECF

10    docket, please do so with our traditional, you know,

11    certificate of service that we haven't done in a while, that

12    you've actually mailed it out and make sure it gets mailed

13    out, all right?

14              MS. OSTA:  Yes, Your Honor.

15              THE COURT:  All right.  How long would you guys like

16    for a motion to dismiss briefing?  When do you want to file?

17              MS. OSTA:  Your Honor, Gulf Air would request two to

18    three weeks, please.

19              THE COURT:  Okay.

20              MR. TICATCH:  Your Honor, that schedule works for us

21    as well.

22              THE COURT:  All right.  Ma'am, how long would you

23    like to file an opposition?  Do you want 30 days?  That's

24    what, you know, usually people ask for is 30 days.

25              MS. JOSEPHANO:  Is it possible that we get it in a
```

```
1   month, like them submitting that, so we can have time to get

2   legal representation.

3           THE COURT:  Yeah.  So what I will do is -- what's

4   today, the 28th?  You guys okay with April 18th, that's eight

5   weeks -- that's three weeks.

6           MS. OSTA:  Yes, Your Honor.

7           MR. TICATCH:  Yes.

8           THE COURT:  All right.  So I'm going to make their

9   motion due on April 18th.  And then I'm going to give you all

10  two months,  -- I'm going to give you until May 16 to oppose,

11  so you get 60 days to try to find a lawyer.  And then I will

12  give them until June 6th to reply.  And then we will set a

13  hearing.

14          Counsel, I don't need a briefing on the 12(b)(6) at

15  this point, just jurisdiction for now.  If I find that they

16  have jurisdiction, I'll let you file a 12(b)(6) later, all

17  right?

18          MS. OSTA:  Thank you, Your Honor.

19          THE COURT:  All right.  Ma'am, does that -- did you

20  understand that schedule?

21          MS. JOSEPHANO:  Yes, I did.

22          THE COURT:  All right.  So we will send out a minute

23  order with the schedule on it.  Can you guys print it out and

24  send it to her, please?

25          MR. TICATCH:  Yes, we can do that.
```

```
1              THE COURT:  All right.  Anything else at this time?
2              MR. TICATCH:  Your Honor, I have been alerted that
3    one of the plaintiffs in this case has filed a lawsuit against
4    me, personally, and my client American Airlines, based on the
5    same issue that was addressed here today.  I'm not sure if
6    there's anything we can do on that today, but --
7              THE COURT:  What's the issue?  What's the issue?
8              MR. TICATCH:  That -- the claim is for fraud and
9    abuse of process, again, on the certificate of service.
10             THE COURT:  Okay.  Ma'am --
11             MS. JOSEPHANO:  No, it's not about the certificate
12   of service.  Don't say -- you have to give the picture
13   correctly.
14             THE COURT:  Okay.  What's the correct picture.
15   Ma'am, what's the correct picture?
16             MS. JOSEPHANO:  I emailed him twice and I spoke to
17   him like four times, and every time he actually misled me that
18   he did serve -- send papers and that he did do all --
19   everything correctly.  And I pretty much begged him to fix it.
20   And I gave him a chance and I said, I want to argue the
21   merits.  We do not want this on procedures.  And he still
22   refused.  And then he was so sure that the judge is not going
23   to care for your case.  That's exactly what he told me.
24             THE COURT:  All right.  Well, I'm not going to get
25   into he said, she said, I think what he meant was --
```

```
 1              MS. JOSEPHANO:  This is a different case.  This has

 2    nothing to do with --

 3              THE COURT:  All right.  Ma'am.  Ma'am.  Where was

 4    that case filed, Mr. Ticatch?

 5              MR. TICATCH:  Here.  And I believe it's been

 6    assigned to you, I think maybe because it's a related case,

 7    but I have not been served with it yet.  I just found it on

 8    the docket.

 9              THE COURT:  All right.  Ma'am, I still don't

10    understand what you think that he did incorrectly, he --

11    everything that I have seen that he has done, he has done

12    correctly.  He is under no obligation to talk you about the

13    merits of the case.  None.  There's no rule that requires him

14    to talk about the merits of the case.  He doesn't even have to

15    take your phone call if he doesn't want to.

16              MS. JOSEPHANO:  I'm -- I'm sorry here, I think I

17    deserve a chance in my other case, which is not related to

18    this case, it has nothing to do and it's against him

19    personally, it's not against the defendants in this case.

20    This man --

21              THE COURT:  Ma'am.  Ma'am, it is related in this

22    case under our rules, it is my case, so if you, you know, --

23    Mr. Ticatch if you want to --

24              MS. JOSEPHANO:  Dismiss it and I'll just appeal,

25    because that's separate case, has nothing to do with this one,
```

```
1    that's personal.

2              THE COURT:  One second.

3              All right.  Ma'am, I mean, I'm telling you right now

4    that this second complaint, I'm looking at it right now, has

5    no basis in it whatsoever.

6              Mr. Ticatch, file a short brief motion to dismiss

7    with your other motion.

8              MS. JOSEPHANO:  But it wasn't served on him yet.  I

9    haven't served him yet because I plan to hire a lawyer for

10   it.

11             THE COURT:  I can --

12             MS. JOSEPHANO:  You can dismiss it from your end and

13   I can appeal it.

14             THE COURT:  Ma'am, I'm not going to dismiss it from

15   my end without giving you a chance to respond to a motion.

16             Mr. Ticatch, you've officially been served.  I just

17   served you.  Will you please file a motion.

18             MS. JOSEPHANO:  But I'm going to amend the claim,

19   I'm not ready to submit the claim as it is.

20             THE COURT:  Well, I'm not going to --

21             MS. JOSEPHANO:  I have 21 days to amend the claim.

22   How can you serve him on me if I have a lawyer, I want to get

23   a lawyer for it.

24             THE COURT:  All right.  Ma'am, you know what, fine.

25   You have until -- when do you have until -- to amend do you
```

```
 1   think?  When does she have to amend, do you guys know?
 2              MS. JOSEPHANO:  19 days or maybe 15 days.
 3              MR. TICATCH:  I think the only deadline right now is
 4   the service deadline, which I think is 60 days or 90 days.
 5              MS. JOSEPHANO:  I'm actually thinking of filing
 6   criminally on you, just so you understand the position we're
 7   in, because he did actually --
 8              THE COURT:  All right.  Ma'am, you cannot file
 9   criminal charges against anyone, only a prosecutor can do
10   that.  All right.  I'm not going to have you harass the
11   lawyer.  If I start seeing that you're harassing the lawyer,
12   there are going to be consequences.  All right?
13              MS. JOSEPHANO:  That's what I -- filing a police
14   report.  That's what I meant.  Not filing criminal charges,
15   sorry, for my --
16              THE COURT:  All right.  Well, you file the police
17   report and it will go absolutely nowhere.  And if I find that
18   Mr. Ticatch is getting harassed by you, I have all the power
19   in the world to impose --
20              MS. JOSEPHANO:  Why are you -- why are you -- why
21   are you, like, being rough on me only?  Why?
22              THE COURT:  Ma'am --
23              MS. JOSEPHANO:  I'm on every step of your rules,
24   they didn't.  Why are you being rough on me, like, I don't
25   understand.
```

```
 1              THE COURT:  Ma'am, I'm not being rough on you, I'm

 2    trying to -- in fact, I've been far more patient than about 99

 3    percent of judges would be under the circumstances.  You

 4    are -- you missed -- your complaints are based on a

 5    misconstruction of the rules.  All right.  What you are

 6    saying, and I looked at the complaint that Mr. Ticatch did

 7    incorrectly, he did not do incorrectly.  Now, if you want to

 8    file a lawyer and file an amended complaints, by all means do

 9    so.

10              Mr. Ticatch, after you get served with a complaint,

11    file your motion, two, three weeks, then we will set a

12    briefing schedule and then we will get that taken care of as

13    well.  And, ma'am, you will have every opportunity to oppose

14    that motion.

15              MS. JOSEPHANO:  Thank you.

16              THE COURT:  All right.

17              MS. JOSEPHANO:  Thank you very much.

18              MR. TICATCH:  I'm sorry, Your Honor, just to

19    clarify, you want a letter, like we did in this case, or you

20    want me to skip that step?

21              THE COURT:  Don't -- you don't need a PMC in this

22    one, just file your motion.

23              MR. TICATCH:  Okay.  Thank you, Your Honor.

24              THE COURT:  Just wait until you get served and then,

25    you know, file within some reasonable time after you get
```

```
 1    served.  I'll set a briefing schedule to let her know when to

 2    oppose, all right?

 3              MR. TICATCH:  Sounds good.  Thank you, Your Honor.

 4              THE COURT:  All right.  Mr. -- if any party here is

 5    abusing the system, or harassing the other side, please bring

 6    it to my attention and we will get it dealt with, okay?

 7              All right.  Thank you.

 8              All right.  Thank you, everyone.

 9              MR. TICATCH:  Thank you.

10              MS. OSTA:  Thank you.

11              MR. JOHNSTON:  Thank you, Your Honor.

12              (The proceedings were concluded at 2:21 p.m.)

13              I, Christine Asif, RPR, FCRR, do hereby certify that
      the foregoing is a correct transcript from the stenographic
14    record of proceedings in the above-entitled matter.

15                    _____/s/_____
                      Christine T. Asif
16                    Official Court Reporter

17

18

19

20

21

22

23

24

25
```